## CATALDO v. A/S GLITTRE et al.
### No. A–15999.

District Court, E. D. New York.

Oct. 24, 1941.

David M. Fink & Jacquin Frank, of New York City, for libelant.

Haight, Griffin, Deming & Gardner, of New York City (J. Ward O'Neill and Edgar R. Kraetzer, both of New York City, of counsel), for respondent.

Callaghan, Stout & Nova, of New York City (Barnett J. Nova, of New York City, of counsel), for respondent impleaded.

**556**

MOSCOWITZ, District Judge.

This is a libel by Filadelfo Cataldo against A/S Glittre, owner of the m/s Fernbank, for injuries sustained by libelant during the course of his employment as a longshoreman engaged in unloading said ship. The libelant's employer, Turner Universal Terminals, Inc., has been impleaded by the ship owner as a party defendant.

The claim of the libelant is set forth in the libel as follows: "Fifth: That on or about the 17th day of February, 1940, while the libelant was lawfully on the Steamship 'Fernbank' and assisting in the unloading of cargo from the said Steamship 'Fernbank', suddenly, without any fault on his part and wholly and solely through the carelessness and negligence of the Steamship 'Fernbank', its officers and employees, and through the carelessness and negligence of the respondent, A/S Glittre, its officers, agents, servants, employees and crew, libelant was caused to be precipitated from the ship on to the dock, as a result of which he was severely and permanently injured. That the respondent was reckless, careless and negligent in failing to furnish the libelant with good, proper and secure ways, works, means and appliances; in failing to furnish the libelant with good, proper and secure guy lines, and the said respondent did actually furnish the libelant with worn, defective and dangerous equipment used in the discharge of the cargo, and the equipment furnished was insufficient for the purposes intended, so that the said guy line broke, and the respondent, its officers, agents, servants, employees and crew had actual knowledge of the defective condition of the equipment so furnished for the purpose of unloading the cargo but failed to repair same or replace same with good, proper and sufficient equipment, and the libelant was not furnished with a good and safe place in which to work, as a result of all of which he was caused to be injured." In essence the alleged negligence appears to consist in the ship supplying defective equipment.

The respondent in its petition sets forth the basis of its impleader as follows:

"That the negligent acts or omissions complained of in the libel and which libelant alleges were the acts and omissions of respondent are the negligent acts or omissions of said Turner Universal Terminals, Inc., and not those of respondent or the s/s Fernbank, her owners, agents, servants or employees.

"That if libelant was injured as alleged in the libel, said injury was caused by the negligent acts or omissions of the said Turner Universal Terminals, Inc., and was not caused by the negligent acts or omissions of respondent, by virtue of which the said Turner Universal Terminals, Inc., is solely liable to the libelant for the damages alleged in the libel, or is primarily liable therefor, or is liable to indemnify the petitioner for any damages which may be decreed against it."

In essence the basis of the petition is that the acts and omissions alleged in the libel are the acts and omissions of libelant's employer and not of the ship owner.

The question before the Court is whether the impleaded-respondent's exceptions to the respondent's petition are to be sustained. Two main arguments are urged in support of the exceptions. First it is contended that no privity exists between the ship owner and the libelant's employer so that no basis can be laid for a tort claim. Secondly, it is claimed that since the impleaded-respondent supplied workmen's compensation, no claim can be asserted against it in view of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 905, which provides as follows: "Exclusiveness of liability. The liability of an employer prescribed in section 904 of this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, * * *."

In connection with the first argument impleaded-respondent points out that it was not employed by the ship owner, but actually by a third party sugar refiner. As a practical matter, however, the ship owner paid the impleaded-respondent for its stevedoring work, so that there can be little doubt but that it knew who its real hirer was. The doctrine of privity probably found its roots in the belief that to be charged with tort liability one should be in a position to know the persons to whom his tort duty extended. A contract relationship was found to be a convenient measure. One is reminded, however, of the words of Chief Judge Cardozo in Ultramares Corp. v. Touche, 255 N.Y. 170, 180, 174 N.E. 441, 445, 74 A.L.R. 1139, wherein he said: "The assault upon the citadel of privity is proceeding in these days apace." Here there

can be no doubt that impleaded-respondent, despite any absence of formal contractual relationship, realized an obligation to the ship owner in the performance of its work. Certainly it would have asserted a claim against the ship owner were it not paid. It in turn owed an obligation of due care. Though privity in a restricted sense did not exist, the relationship of the parties was such as to bring the ship owner within the orbit of impleaded-respondent's obligation of due care as one who might certainly be injured if such care was not exercised.

More serious, however, is the objection based upon the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. If, as noted above, the respondent's petition be analyzed in the light of the libel, the negligence alleged is defective ship's equipment for which the respondent and not the impleaded-respondent would be liable. On the other hand, if the defective equipment be regarded as the equipment of the stevedore company, the impleaded-respondent, then the Longshoremen's Act effectively bars recovery by the libelant against the stevedore employer. Paolillo v. Rederi A/B Disa, D.C., 38 F.Supp. 833. In such a case the duty breached would be one owed by the stevedore employer to its longshoreman employee, and for which, as a result of the Act, there could be no recovery by the libelant against the stevedore employer. Since the impleader appears to rest on the alleged breach of a duty owed to the libelant by the ship and not by the stevedore company, the exceptions must be sustained.

If on the other hand, the alleged breach of a duty of due care was of a duty owed by the impleaded-respondent to the respondent, a different result might follow. Cf. Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N.Y. 175, 15 N.E.2d 567.

The only negligence claimed by the libelant against the ship is the supplying by the ship of defective equipment. The only allegation in the impleaded petition is the general statement that if the libelant was injured, such injury was caused by the negligent acts or omissions of the stevedore employer. This allegation is too general and sets forth a mere conclusion.

If the intention of the ship is to set up some act of negligence on the part of the stevedore employer, it will be permitted to do so. If the sole cause of the accident was the defective equipment supplied by the ship, it would have no right over against the stevedore employer.

The exceptions are therefore sustained with leave to respondent to amend if there be basis therefore and if it be so advised.

Settle order on notice.